UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO. 5:13-28-KKC |
|---|---|
| Plaintiff, | |
| V. | **OPINION & ORDER** |
| JORGE ARMANDO GOMEZ MACIAS, | |
| Defendant. | |

*** *** ***

This matter is before the Court on a motion to suppress evidence filed by Defendant Jorge Armando Gomez Macias. (DE 149). Gomez Macias seeks suppression of two forms of evidence which he believes were obtained in violation of his Fourth Amendment rights: (1) references to a Toyota Corolla observed at or near the scene of a controlled narcotics exchange and (2) references to and admission of a key found on a key ring that fit the locks of the residence at 1051 Duval Street, Lexington, KY, 40515. For the following reasons, the motion will be denied.

I.

Gomez Macias was arrested on February 16, 2013 in conjunction with a controlled narcotics transaction conducted by DEA personnel in Lexington, Kentucky. When the agents arrested him, they discovered a key to the residence located at 1051 Duval Street, Lexington, Kentucky, 40515. This is the same residence that the agents followed co-defendant Cesar Edgardo Mariscal Felix to after he exchanged $1.8 million in cash for approximately 93 kilograms of a simulated replacement for cocaine. Gomez Macias

contends that the officers lacked probable cause to arrest him, and the fruits of his arrest must be suppressed.

The defendant's recitation of the pertinent facts comes from DEA Special Agent Troey Stout's affidavit supporting a search warrant, along with his testimony at the preliminary hearing. In describing why the agents lacked probable cause to make an arrest, Gomez Macias does not dispute any of the relevant facts as told by Sout, but instead argues that these facts are insufficient to support a finding of probable cause. Because the facts at issue for this motion are not in dispute, a hearing is not necessary.

On February 15, 2013, DEA Agents in Lexington, Kentucky were contacted by their counterparts in Oklahoma regarding an individual they arrested in route to a drug transaction in Lexington. The individual had approximately 90 kilograms of cocaine and was scheduled to deliver it to Lexington the following day. After his arrest, the individual agreed to cooperate and DEA agents in Lexington arranged for a controlled transaction where the cocaine would be replaced by a simulated substance.

The next day, on February 16, 2013, the agents used the cooperating individual to arrange the drug transaction, which took place at a parking lot off of Brentwood Court, near Nandino Boulevard and Georgetown Road. According to the affidavit, the cooperating source had previously engaged in two transactions near this area during which he picked up boxes of money in exchange for the contraband he was transporting. The DEA agents secured the cocaine, replaced it with a non-controlled substance, and arrived at the meeting location at approximately 6:07 p.m. At 7:12 p.m., a Toyota Corolla occupied by one person arrived at the scene. The agents could not obtain a license plate from the Corolla.

A truck driven by Mariscal Felix pulled up behind the Corolla, stopped, and then drove past it to park next to the cooperating source's vehicle. According to Stout, it appeared that

the Corolla was conducting counter-surveillance, which the agents expected given the large amount of contraband seized from the cooperating source. The agents then observed Mariscal Felix make an exchange with the cooperating source before leaving.

The agents followed Mariscal Felix as he left the scene. The affidavit states that they followed Mariscal Felix's truck, which was being followed by the Corolla. However, the story appears to be a little more nuanced than the affidavit originally described. According to Stout's testimony at the preliminary hearing, the Corolla left the scene a few minutes before the truck, and the agents—without knowing that the Corolla was certainly involved—chose to stay only with the truck. (Preliminary Hearing, Testimony of Troey Stout, DE 27, at 13). As the agents were following the truck, a light-colored Corolla appearing identical to the one observed earlier pulled out into traffic and inserted itself between the agents and Mariscal Felix. (*Id.* at 14). The Corolla then drove in tandem with the truck all the way to the residence on Duval Street, where it paused briefly as the truck entered the residence before driving off. (*Id.*; Application for Search a Warrant. DE 149-1, at 8).

Again, Gomez Macias does not dispute any of these facts. Nor does the United States appear to disagree with the following: the officers did not initially observe the Corolla's license plate before it first left the scene of the exchange; the officers could not identify the age, gender, build, hair color, or ethnic description of the occupant in the Toyota Corolla first observed; the officers could not identify the car by its exact color other than to say it was light; the first Corolla observed was likely within 100 yards of the initial drug transaction and the light was not very good. Despite this, when the Corolla driven by Gomez Macias pulled out in front of the officers and began driving in tandem with the

truck, the agents described it as being almost identical to the one observed at the scene of the exchange.

II.

The crux of the defendant's argument is that he was arrested without probable cause, and any evidence obtained from his unlawful arrest must therefore be suppressed. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed." *United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006). Here, the question is whether the agents arresting Gomez Macias had probable cause to believe he was involved with the drug transaction off Brentwood Court.

"Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). It "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005) (quoting *United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989)). In making a probable-cause determination, courts must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable . . . officer, amount to' probable cause." *Abdi*, 463 F.3d at 557 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

As a threshold matter, it's not clear on what grounds Gomez Macias seeks to suppress "[a]ll references to a Toyota Corolla at or near the scene of the exchange of purported illegal substances between the cooperating witness and the co-defendant, Cesar Edgardo Mariscal

4

Felix." (DE 149, at 1). The agents have testified both in the preliminary hearing and in their affidavits that they observed a Toyota Corolla at the scene of the controlled drug purchase. Such an observation clearly falls outside the gambit of the Fourth Amendment: the car was seen in public and observed firsthand by law enforcement personnel. No theory of privacy would prevent the agents from testifying about their firsthand observations of a car driving to and from a public place. Any argument otherwise is plainly without merit.

The issue of probable cause does, however, arise with regard to the key found on the defendant's key ring. Gomez Macias contends that the officers lacked probable cause because they were not certain that the Corolla observed following the truck was the same one spotted earlier, and even if it was, the defendant's "mere propinquity" to Mariscal Felix is not sufficient to establish probable cause. (DE 149, at 8) (quoting *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005)).

While it's true that the agents were not *certain* that the light-colored Corolla observed following Mariscal Felix was the same light-colored Corolla spotted earlier, the agents have testified that it appeared "almost identical." (Preliminary Hearing, Testimony of Troey Stout, DE 27, at 27). Moreover, the fact that the agents did not have the license plate number or similar identifying information might be problematic if there were no other facts to support a finding of probable cause. But this is not the case here. The agents observed the Corolla interject its way between them and the truck, follow the truck all the way across town and to a residence, and finally pause as if waiting for the truck to enter the residence before leaving. This information, along with the fact that a similar looking vehicle was spotted at the scene of the drug deal, gave the officers probable cause to believe the occupant in the Toyota Corolla was involved in drug trafficking. The fact that they didn't

5

know with *certainty* that the cars were the same is not fatal: probable cause does not require conclusive proof that a crime has been committed. *See Moncivais*, 401 F.3d at 756.

Gomez Macias relies on *United States v. Davis* to argue that the agents lacked probable cause. In *Davis*, the Sixth Circuit Court of Appeals held that a defendant's mere propinquity to a known drug dealer is not sufficient to establish probable cause. *Id.* at 352–53. The court in *Davis* stated the following:

> The argument is based primarily upon the following information: Davis met with Presley (who was a suspected drug dealer), others who had met with Presley had been found with drugs, and detergent boxes were present while Davis and Presley spoke. However, this improperly bases a finding of probable cause on a person's mere propinquity to others independently of suspected criminal activity. . . . The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security.

*Id.* (internal quotations omitted).

The instant case, however, is distinguishable from the above analysis. Here, Gomez Macias was not stopped solely because he spoke to or was in the vicinity of a known drug dealer. Rather, the agents observed his car at the scene of an ongoing drug transaction involving 93 kilograms of cocaine and $1.8 million in cash. The defendant was then observed following Mariscal Felix, who again, had just been observed exchanging $1.8 million in cash for what he believed was 93 kilos of cocaine. The difference between this case and *Davis* could not be more clear: the agents believed they saw Gomez Macias's vehicle at the scene of the crime where he was providing counter-surveillance. They did not arrest him simply because they observed him speaking to a known drug dealer.

The facts here clearly establish probable cause. The DEA agents arranged for a large-scale drug transaction. During the transaction they observed behavior that appeared to be

counter-surveillance by an occupant in a light-colored Corolla. A similar Corolla then reappeared on the way out and followed the suspect back to his residence. The Corolla appeared to pause as the suspect entered the residence before driving off. All of these facts provided the agents with a reasonable belief that the occupant of the Corolla—Gomez Macias—was involved in drug trafficking by providing counter-surveillance. Because they had probable cause to believe this, they were entitled to place him under arrest and seize the keys in his possession. Accordingly, the defendant's motion to suppress evidence (DE 149) is **DENIED**.

Dated this 16th day of July, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY